# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 01-005-04 |
| v. | : | |
| | : | |
| | : | CIVIL ACTION |
| GARY RAMSEY | | |
| | | NO. 04-4101 |

## Memorandum and Order

YOHN, J.                                                                                                    February ___, 2006

      Defendant Gary Ramsey has filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255.  Ramsey argues that he should be resentenced because: 1) a state court has vacated a conviction that served as a predicate to the career offender enhancement that this court applied in his original sentencing, and 2) his sentence violates the constitutional rule of criminal procedure announced by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), and that he should be able to present an argument based on that case on habeas review because he raised a similar claim based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), on direct appeal.  For the reasons set forth below, I will deny the motion.

**I. Factual History**

      On August 30, 2000, Ramsey and Marcus Jackson entered the Lansdale First Union Bank, both armed with semiautomatic weapons.  Jackson headed to the rear of the bank, where the vault is located, and forced two supervisors into a side office.  He struck one supervisor in the

head, shattering his ear drum. Jackson then dragged the other supervisor toward the vault and demanded that she open it. In the process, he struck her in the face several times and threatened to kill her. Eventually, she opened the day vault, a coin vault, and her teller station, from which Jackson removed money. At the same time, Ramsey took charge of the front of the bank. He kept his gun trained on the tellers and customers, and, after suspecting that one teller had sounded an alarm, he fired his gun at her, narrowly missing. Ultimately, the robbers escaped with $67,259.

Ramsey committed a second robbery on November 24, 2000. He organized and planned this robbery, and also recruited two other men, Demond Wright and John McClure, to participate. On November 24, the men first traveled to Pikeland Elementary School, which was closed that day. They entered a second-grade classroom, and, using gasoline as an accelerate, set it ablaze as a diversion to the local police. The fire department was summoned and put out the fire, but not before the classroom was completely destroyed and an entire wing of the school was damaged. This arson caused $550,000 of damage.

While law enforcement was responding to the fire, Ramsey, Wright, and McClure entered the Valley Forge Mall First Union Bank. They threatened to kill everyone inside the bank if anyone called the police, and, at gunpoint, ordered five employees and seven customers to the ground. The men were able to steal $275,920. However, one customer managed to slip away, and told a civilian witness, J.K., about the ongoing robbery. J.K., who was in his own car, noticed a white minivan with its engine running parked outside the bank. J.K. then saw Ramsey, Wright, and McClure enter the van, and when the van pulled away, he followed it. He followed the van to a parking lot, where the three men exited the van and entered two different cars, which

were waiting with their engines running. Wright and McClure entered a Cadillac, and Ramsey entered a Ford Taurus. J.K. then followed the Cadillac (while Ramsey's Taurus went a different direction), and continued to report to the police. Eventually, law enforcement agents Officer Barrett, Corporal Nemic, and Officer Sousa were able to stop the Cadillac, which was driven by Donna Thomas. Officer Barrett ordered Donna Thomas to exit the vehicle, and she complied. The officers then ordered McClure, who was sitting in the front passenger seat, and Wright, who was sitting in the backseat, to put their hands in the air. Instead, McClure started the car, and Wright pointed a gun at Officer Barrett. McClure then drove the car directly at Officer Sousa, while Officer Barrett and Wright began trading gunfire. During the shootout, Corporal Nemic suffered a detached retina of his right eye and two puncture wounds to his right ear. A four-and-a-half-mile chase ensued, during which the police and Wright traded gunfire. Eventually the Cadillac crashed into a guardrail and McClure and Wright were apprehended, but only after a struggle in which the men tried to force their way into three occupied automobiles which just happened to be in the area of the crash.

Ramsey was not arrested until March 4, 2001. On that date he called a friend, who then contacted the police and provided them with the phone number from which Ramsey had called. The police tracked that phone number and were able to locate and arrest Ramsey.

## II. Procedural History

On May 3, 2001, Ramsey was charged in a third superseding indictment with: 1) conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (count one); 2) armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 2113(d) and 2 (counts two and eleven); 3) using, carrying, and brandishing a firearm and aiding and abetting the

same in violation of 18 U.S.C. §§ 924(c)(1) and 2 (counts three and twelve); 4) using, carrying, and discharging a firearm during the armed bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 924(c)(1) and 2 (counts four and thirteen); 5) using fire to commit a felony and aiding and abetting the same in violation of 18 U.S.C. §§ 844(h)(1) and 2 (count five); and 6) maliciously damaging and destroying by means of fire a building involved in interstate commerce and aiding and abetting the same in violation of 18 U.S.C. §§ 844(I) and 2 (count six).

On October 19, 2001, a jury found Ramsey guilty of all charges. On October 9, 2002, this court sentenced Ramsey to 900-months imprisonment.[1] Ramsey's sentence was enhanced due to his prior criminal convictions and certain facts surrounding the two robberies.[2] Those facts were not submitted to a jury to be proven beyond a reasonable doubt. Ramsey filed an appeal, which was denied by the Third Circuit on October 3, 2003. He did not file a petition for writ of certiorari with the United States Supreme Court.

On September 20, 2004, Ramsey filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255, asserting twenty claims. The court has denied or

---

[1] Based on Ramsey's Total Offense Level of 39 and Criminal History Category of VI, the guideline range for imprisonment was 360 months to life for count six, 60 months for count one, and 300 months for counts two and eleven. I sentenced Ramsey to the lowest point on count six's range, 360 months imprisonment, to run concurrently with the sentence on counts one, two, and eleven. However, Ramsey was also subject to mandatory consecutive sentences of 120 months (for count thirteen), 300 months (for count four), and 120 months (for count five). Thus, despite the court's sentencing Ramsey to the lowest point of the guideline range, the application of the three mandatory consecutive sentences resulted in a total sentence of 900 months.

[2] The court found that, *inter alia*: a police officer sustained serious bodily injury (a detached retina) as a result of the gun battle following the robbery, Ramsey created a substantial risk of death or serious bodily injury to another person by fleeing from a law enforcement officer, and Ramsey organized the Valley Forge First Union bank robbery and recruited two other people to participate in the robbery.

Ramsey has withdrawn eighteen of those claims,[3] leaving only two to be resolved in this memorandum.  Specifically, the court must rule upon Ramsey's claims that he should be resentenced because: 1) one of his state convictions underlying the career offender enhancement has been vacated; and 2) the court violated the Sixth Amendment, as interpreted by *Booker*, by enhancing his sentence under the United States Sentencing Guidelines based on facts found by the court alone, and he preserved his right to collaterally attack his sentence pursuant to the rule of *Booker* by asserting a claim under *Apprendi* on direct appeal.  The court finds that both of

---

[3] Ramsey's § 2255 motion presented the following claims: 1) his attorney was ineffective during the suppression hearing for advising Ramsey not to testify; 2) his attorney was ineffective during the suppression hearing for not calling a Pottstown police officer to testify on Ramsey's behalf; 3) his attorney was ineffective during the plea negotiations because a plea agreement was not consummated; 4) his attorney was ineffective during the trial for failing to object to the introduction of allegedly inadmissible evidence; 5) his attorney was ineffective during trial for failing to object to the jury instruction regarding counts three and four; 6) his attorney was ineffective during trial for failing to object to the government's alleged failure to connect Ramsey's actions to interstate commerce; 7) his attorney was ineffective during a pretrial hearing for failing to have a doctor examine Ramsey and testify about his medical state; 8) the court erred in admitting the allegedly perjurious testimony of government agents and Pottstown police officers; 9) his attorney was ineffective for failing to object to sentencing enhancements for bodily harm; 10) his attorney was ineffective during plea negotiations for not securing a plea agreement for Ramsey; 11) his attorney was ineffective at trial for not objecting to the jury instructions that allegedly improperly removed from the jury the factual finding as to whether the bank was federally insured; 12) his attorney was ineffective during trial for failing to object to the jury instruction regarding the § 2113(d) charge; 13) his attorney was ineffective during the pretrial hearing for failing to file a motion alleging selective prosecution; 14) the court erred by applying the career offender enhancement since one of his predicate convictions has been overturned; 15) his attorney was ineffective for failing to pursue an appeal on certain grounds; 16) the court erred in finding facts that resulted in sentencing enhancements; 17) his attorney was ineffective for failing to object to the FDIC-insured status of the bank and the government attorney's opening statement as to that fact; 18) prosecutorial misconduct; 19) judicial error because the prosecutor did not turn over files regarding similarly-situated individuals; and 20) the court committed a sentencing error in violation of the Double Jeopardy Clause when it sentenced Ramsey under both 18 U.S.C. §§ 924(c) and 2113(d).  On September 8, 2005, Ramsey voluntarily withdrew claims 5, 6, 7, 9, 10, 11, 12, and 19.  Then, on December 21, 2005, after an evidentiary hearing and oral argument, the court denied claims 1, 2, 3, 4, 13, 15, 17, 18, and 20 for the reasons set forth on the record and Ramsey withdrew claim 8.

these arguments are without merit and will deny Ramsey's § 2255 motion.

**III. Discussion**

    **A. Ramsey's Challenge to his Career Offender Designation**

In Ramsey's first remaining claim, he argues that he should be resentenced, under the now-advisory United States Sentencing Guidelines, because in his original sentencing the court found that he was a career offender and applied the attendant guideline enhancement. Now, Ramsey argues, the state court has vacated one of the two convictions upon which his career-offender status was based, so his sentence should no longer be valid.[4] However, because his sentence was not actually enhanced due to his career-offender status, this claim will be denied.

A defendant may use a 28 U.S.C. § 2255 motion to challenge a federal sentence when a state conviction that was used to enhance the federal sentence has been vacated. In *Custis v. United States*, 511 U.S. 485, 487 (1994), the Supreme Court held that a defendant could not use the federal sentencing forum to gain review of his state convictions,[5] but stated that "[i]f Custis is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences."[6] Similarly, in *United States v. Escobales*, 218 F.3d

---

    [4] The parties agreed that the state conviction was vacated and that this occurred sometime after Ramsey's direct review was final.

    [5] The court created an exception to this general rule for "convictions obtained in violation of the right to counsel," *Custis v. United States*, 511 U.S. 485, 487 (1994), which is not relevant here.

    [6] Although *Custis* dealt with a statutory sentence enhancement from the Armed Career Criminal Act of 1984, its rule is equally applicable to an enhancement from the United States Sentencing Guidelines. *See United States v. Thomas*, 42 F.3d 823, 824 (3d Cir. 1994) (stating that "we see no principled way to distinguish a challenge to a prior conviction used to justify an enhancement under the guidelines from a prior conviction used to justify an enhancement under the Armed Career Criminal Act").

259, 261 (3d Cir. 2000), the Third Circuit explained that if a defendant successfully challenges an underlying conviction, "the defendant can then apply for reopening of any federal sentence enhanced by the state sentence or file a 28 U.S.C. § 2255 petition challenging his federal sentence."

In this case, Ramsey's vacated state conviction did not enhance his *sentence*, just his Criminal History Category.  The government correctly notes that even if Ramsey can no longer be categorized as a career offender, his United States Sentencing Guidelines sentence range would not be affected.  His Offense Level was calculated based solely on the crimes that he was convicted of in his federal proceeding, without reference to any past crimes.  Thus, his Combined Adjusted Offense Level was properly determined to be 39, which would not be altered by the state court's vacating one of his prior convictions.  His past offenses were only relevant to his Criminal History Category.  Based on his prior offenses, the court initially found that he had a criminal history score of 12.  After including the career offender enhancement, the court found that his Criminal History Category was VI.  A defendant with a Criminal History Category of VI and a Combined Adjusted Offense Level of 39 is subject to a sentence ranging from 360 months to life.  The court sentenced Ramsey to the lowest point on the range, 360 months.  Nonetheless, even if one of Ramsey's prior felony convictions were vacated, he would still have a criminal history score of 9, which corresponds with Criminal History Category IV.  A defendant with a Criminal History Category of IV and a Combined Adjusted Offense Level of 39 is subject to the same 360 month to life sentence.  Accordingly, the guideline range would be unchanged and

even if there were any error, it was harmless.[7]

Because the two Criminal History Categories offer an identical range of sentences, Ramsey was essentially sentenced without regard to his career offender status. Cases applying the rule of *Custis* have resentenced the defendant when his sentence was actually increased due to his career offender categorization. *See United States v. Cox*, 83 F.3d 336, 339 n.2 (10th Cir. 1996) (noting that without considering the defendant's prior convictions, his sentencing range would be 121-151 months, rather than 135-168 months); *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994) (resentencing appropriate where district court enhanced defendant's sentence to 262-months imprisonment from a sentencing range of 41 to 51 months ); *Candelaria v. United States*, 247 F. Supp.2d 125, 126 (D.R.I. 2003) (explaining that if defendant were not subject to career offender enhancement, his range of imprisonment would be 89 to 108 months, rather than 188 to 235 months). Accordingly, even if Ramsey is no longer properly categorized as a career offender, his sentence should not be reconsidered, because his career offender categorization was irrelevant to the sentence the court imposed.[8] *See Williams v. United States*, 503 U.S. 193, 203 (1992) (holding that sentencing error is harmless where the "error did not affect the district court's selection of the sentence imposed"); *United States v. Slaughter*, 238 F.3d 580, 586 (5th Cir. 2000) (declining to address the merits of a claim because defendant conceded that "the

---

[7] Ramsey's career offender enhancement only impacted his sentence for counts one, two, eleven, and six; counts four, five, and thirteen required the application of consecutive mandatory sentences pursuant to 18 U.S.C. §§ 924(c) and 844(h).

[8] The court notes that if Ramsey were to be resentenced, the Sentencing Guidelines would be advisory, rather than mandatory. Nonetheless, in *Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005), the Third Circuit concluded that the rule in *Booker* is not retroactively applicable to cases on collateral review. Thus, the fact that the Sentencing Guidelines would no longer be mandatory during a resentencing should not militate toward allowing the resentencing.

correction of this alleged error would not change the applicable guideline sentencing range"); *United States v. Sanders*, 41 F.3d 480, 486-87 (9th Cir. 1994) (noting that "with or without the contested point, [the defendant's] sentencing range is fifteen to twenty-one months," and thus, any error in adding the contested point was harmless); *United States v. Cox*, 934 F.2d 1114, 1125 (10th Cir. 1991) (finding that resentencing unnecessary because a mistake that added two points to the defendant's criminal history score did not "affect defendant's appropriate guideline sentencing range"); *Walker v. United States*, 2006 WL 36862, at *6 (E.D. Tenn. Jan. 5, 2006) (finding in ineffective assistance of counsel case that there was no prejudice where contested two-level enhancement did not affect defendant's guideline sentencing range).  Because even if Ramsey had not been subject to the career-offender enhancement, the court could not have sentenced him to a shorter term of imprisonment than the 360-month term that he received, this claim will be denied.

**B. Ramsey's *Booker/Apprendi* Claim**

In his second claim, Ramsey argues that the court violated his Sixth Amendment rights, as interpreted by *Booker*, by enhancing his guideline sentence based on facts that were neither admitted by him nor found by the jury.  He further argues that despite the Third Circuit's holding that *Booker* is not retroactively applicable on collateral review, he should be able to present a *Booker* claim in this collateral action because he raised an *Apprendi* argument on direct appeal.[9]  Because the rule of *Booker* is not available to a defendant on collateral review, even if the

---

[9] Specifically, on direct appeal, Ramsey argued that "the District Court committed plain error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in sentencing Mr. Ramsey pursuant to adjustments of the sentencing guidelines where the elements of the adjustments were not pleaded in the indictment nor charged to the jury as elements requiring proof beyond a reasonable doubt."

defendant raised an *Apprendi* claim on direct appeal, this claim will be denied.

As Ramsey concedes, in *Lloyd v. United States*, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "*Booker* announced a rule that is 'new' and 'procedural,'" but not 'watershed,' [so] *Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* issued."  However, Ramsey attempts to distinguish his case due to the fact that the defendant in *Lloyd* may not have challenged the district court's application of the Sentencing Guidelines on appeal, whereas Ramsey did raise such a challenge.  However, this distinction is not meaningful both because the challenge Ramsey seeks to raise must be made pursuant to *Booker*, not *Apprendi*, and because in retroactivity jurisprudence the important issue is whether the case is presently on direct or habeas review, not whether the defendant correctly anticipated a future Supreme Court opinion.

First of all, *Booker* announced a new rule that is distinct from the rule of *Apprendi*.  As the Third Circuit stated, "post-*Apprendi* but pre-*Blakely*, a court would not have believed itself compelled to conclude that what became the '*Blakely* rule' was constitutionally required."  *Lloyd*, 407 F.3d at 613.  *See also Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005) (stating that the result in *Booker* "was not dictated by *Apprendi*").  Thus, the fact that Ramsey raised an *Apprendi* claim on direct appeal is irrelevant to his current claim.  *Apprendi* dealt with facts that increased the maximum legal sentence, not the Sentencing Guidelines.  *Apprendi* did not rule that it was a Sixth Amendment violation for a court to enhance a defendant's sentence under the United States Sentencing Guidelines based on facts neither found by a jury nor admitted by the defendant; *Booker* did.  Thus, if Ramsey seeks to raise such a claim, he must assert a claim based on *Booker*, not *Apprendi*.  As the Ninth Circuit has explained:

> [The defendant] attempts to bypass the question of whether *Blakely* applies retroactively to cases on collateral review by arguing that *Apprendi* was decided before our decision on direct appeal and *Blakely* did no more than "clarif[y]" that *Apprendi* "applie[d] equally to any facts that enhance maximum sentences within a guideline sentencing system." We recently agreed with the proposition, however, that *Blakely* "did more than just apply *Apprendi*; it created a new rule that was not compelled by *Apprendi* or its progeny."

*United States v. Triplett*, 2005 WL 2931929, at *3 n.4 (9th Cir. Nov. 7, 2005). Thus, in order to challenge the court's application of the Sentencing Guidelines, Ramsey must present a claim based on the Supreme Court's decision in *Booker* (which, of course, would fail, since the Third Circuit has ruled that *Booker* is not retroactively applicable on collateral review).

Additionally, while the Third Circuit has not explicitly so held, the Tenth Circuit has found that the fact that a defendant raised an *Apprendi* claim on direct appeal does not preserve the defendant's rights to subsequently bring a *Booker* claim on collateral review. *See Allen v. Reed*, 427 F.3d 767 (10th Cir. 2005) (stating "we have expressly held that *Blakely* did not announce a watershed rule of criminal procedure which would apply retroactively to petitioners on collateral review who raised *Apprendi* on direct appeal"); *United States v. Anderson*, 133 Fed. Appx. 549 (10th Cir. 2005) (stating "an *Apprendi* claim [raised on direct appeal] does not preserve a *Blakely* (now *Booker*) claim"); *see also United States v. Hoffner*, 2005 WL 3078220, at *5 (E.D. Pa. Nov. 16, 2005) (explaining that court would not accept defendants' argument that their counsel was ineffective for failing to raise *Booker*-like claim, before *Booker* was issued, in part because to do so would "be creating a giant loophole to circumvent the non-retroactivity of *Booker*"); *United States v. Agramonte*, 366 F. Supp.2d 83 (D.D.C. 2005) (defendant raised *Apprendi* claims on appeal, but still was not permitted to assert *Booker*'s rule on collateral review). The court finds these rulings to be persuasive, particularly since the defendant has

11

presented no case law to support the massive exception to the non-retroactivity of *Booker* that he proposes.

Indeed, the exception that Ramsey proposes does not comport with the carefully circumscribed limits of *Teague v. Lane*, 489 U.S. 288 (1989). In *Teague*, the Supreme Court held that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." *Id.* at 304 (citation omitted). The Court created two exceptions to this general rule, providing that new rules of constitutional criminal procedure will be applicable on habeas review[10] where the new rule: 1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *id.* at 307 (internal quotation and citation omitted); or 2) is a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding," *Beard v. Banks*, 542 U.S. 406, 417 (2004) (internal quotation and citation omitted). The Court created a separate rule of retroactivity for cases on habeas review because of "'the purposes for which the writ of habeas corpus is made available.'" *Teague*, 489 U.S. at 307 (quoting *Mackey v. United States*, 401 U.S. 667, 682 (1971) (Harlan, J.,

---

[10] Justice Harlan, whose theory of retroactivity was adopted in *Teague*, explained:
> I realize, of course, that state prisoners are entitled to seek release via habeas corpus under 28 U.S.C. s 2241, while federal prisoners technically utilize what is denominated a motion to vacate judgment under 28 U.S.C. s 2255. However, our cases make these remedies virtually congruent and the purpose of substituting a motion to vacate for the traditional habeas action in the federal system was simply to alter one minor jurisdictional basis for the writ. As I do not propose to make any distinction, for retroactivity purposes, between state and federal prisoners seeking collateral relief, I shall refer throughout this opinion to both procedures as the writ of habeas corpus, and cases before us involving such judgments as cases here on collateral review.

*Williams v. United States*, 401 U.S. 667, 682 (1971) (internal citation omitted).

concurring in part and dissenting in part)). The Court noted that a key purpose of habeas corpus is to ensure that lower courts "apply the constitutional standards that prevailed at the time the original proceedings took place." *Id.* (internal quotation and citation omitted). So long as the court correctly applied the standards as they existed at the time, the ruling should generally not be disturbed because "application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Id.* at 309. Thus, as detailed above, the Supreme Court created only two very narrow exceptions to the absolute bar on the retroactive applicability of new rules on habeas review. Indeed, the second exception has never been used. *See Beard*, 542 U.S. at 417 (stating "we have yet to find a new rule that falls under the second *Teague* exception"). Nonetheless, Ramsey asks this court to accept what is effectively a third exception, which would be available to a defendant who, on direct appeal, successfully anticipated a rule that would be announced by the Supreme Court at some later time. He cites no authority for this proposition and the court will not accept this argument. Such an exception would drastically expand the number of defendants who would be permitted to assert new rules on habeas review, and would therefore seriously undermine the principle of finality, which is at the root of *Teague*'s rule. Because the court concludes that applying the exception that Ramsey proposes would conflict with *Teague*, the court will not look beyond the rule of *Lloyd* in ruling upon Ramsey's case.

Thus, because *Booker* is not retroactively applicable on collateral review, Ramsey's claim based on that case must fail. Accordingly, this claim will also be denied.

### C. Certificate of Appealability

Finally, the court must determine whether a certificate of appealability should issue. The court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the court has determined that Ramsey's two claims are without merit. The court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, Ramsey has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 01-005-04 |
| v. | : | |
| | : | |
| | : | CIVIL ACTION |
| GARY RAMSEY | | |
| | | NO. 04-4101 |

## Order

Yohn, J.

     AND NOW on this _____ day of February 2006, upon consideration of defendant Gary Ramsey's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255 (Doc. No. 326), the government's supplemental response thereto, the defendant's Memorandum in Support of Claim Number 16, and the government's supplemental response thereto, it is hereby ORDERED that:

     1. The defendant's motion is DENIED.

     2. The defendant having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.

     3. The Clerk shall mark this case CLOSED for statistical purposes.

                                                               s\ William H. Yohn, Jr., Judge
                                                               _____
                                                                 William H. Yohn, Jr., Judge