IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 01-005-04 |
| GARY RAMSEY | : |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SUPPLEMENTAL MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

The government responds in opposition to the supplemental motion for compassionate release filed by defendant Gary Ramsey (docket no. 495, filed Dec. 17, 2020).

Ramsey filed a motion for compassionate release on September 3, 2020 (docket no. 484). The government filed a lengthy response on September 9, 2020 (docket no. 488), explaining that Ramsey does not present any "extraordinary and compelling reason" allowing compassionate release, and even if he did, relief would not be warranted in light of Ramsey's egregious crimes and record. The government filed a supplemental letter on December 2, 2020 (docket no. 492), addressing Ramsey's medical condition.

His latest supplemental motion does not change our assessment. The government continues to advocate that the motion for compassionate release be denied. We rely on all the information and arguments presented earlier, and respond here only to the new points raised by Ramsey.

**1. Medical condition.** There has been no change in Ramsey's status since our last report. It remains the case that he has recovered from COVID-19, and does not present any risk factor posing a risk of a severe outcome from that disease in any event.

The supplemental motion states that Ramsey currently "is out of breath and has recently been having trouble with his eyesight, which he has never had in the past." The medical records provided by the Essex County Correctional Facility, where he has been held for the last month, do not support this claim.

The latest records are filed as Exhibit A, under seal.

They show that the results of a chest x-ray taken on November 23, 2020, have been received. The radiologist stated, "The examination of the chest shows the heart and mediastinum to be normal. The lungs are free of infiltrate or effusion. There is no evidence of active tuberculosis."

Ramsey then had a full check-up yesterday, on December 22, 2020. At that time, according to the notes: "Pt. [patient] states that he had covid in March, and since then, he has been having diarrhea, bubbling in his stomach and also burning. Denies loss of taste, smell or upper resp symptoms. Pt. also c/o [complains of] poor vision, attributable he said, to the corona virus." In other words, he did not report difficulty breathing.

The thorough physical examination was unremarkable. The examiner stated that Ramsey's general appearance was "well nourished, well hydrated, no acute distress." His temperature and blood pressure were normal. With regard to respiratory conditions, the examiner wrote:

Respiratory effort: no intercostal retractions or use of accessory muscles
Auscultation: no rales, rhonchi, or wheezes

All other conditions, including cardiovascular, gastrointestinal, lymphatic, and physiological were deemed normal. On an eyesight test, his vision was an excellent 20/13.

The examiner's assessment was as follows:

1. HTN [hypertension] - B/P WNL [blood pressure within normal limits]. Will not start pt. on any hypertensive meds at this time.

2. Hyperopia - pt. reassured that he has good distant vision, 20/13 OU [both eyes], OS [left eye] and OD [right eye]. Encouraged to purchase reading glasses from commissary, reading strength 2.5.

3. Diarrhea - increased hydration and proper hand hygiene encouraged/reminded. Pepto bismol ordered. Stool ordered.

It thus plainly remains the case that Ramsey presents no condition that is a risk factor for severe COVID-19 disease, and therefore is not eligible for consideration for compassionate release.

**2. Recovery from COVID-19.** This determination is reinforced by the fact that Ramsey recovered from COVID-19 and is not showing any significant effects from that illness. Many courts have denied relief on this basis in similar cases. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the

contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Moore*, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) (Beetlestone, J.) (inmate suffers from mild obesity and hypertension; release is denied because he recovered from COVID-19 without symptoms); *United States v. Risley*, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) ("Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release."); *United States v. Purry*, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) (the possibility of reinfection does not change an earlier denial of relief; "a possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying his release.")*; United States v. Zahn*, 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020) (Lompoc inmate has recovered; while there is no certainty about the risk of reinfection, "Even so, the immediate threat to Zahn has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Kim*, 2020 WL 3213312 (D. Haw. June 15, 2020) (same); *United States v. Curtiss*, 2020 WL 3146506, at *2 (W.D.N.Y. June 15, 2020) (same); *United States v. Billings*, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) ("At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical. That uncertainty militates against an entitlement to compassionate release. . . . Indeed, in other cases where inmates have recovered from COVID without lingering symptoms, courts have found the theoretical risk of reinfection does not present a compelling reason warranting compassionate release.") (citing cases).

**3. Stacked 924(c) sentences.** Ramsey presents a new argument, that compassionate release is warranted based on the change in sentencing law in which, beginning with sentences imposed after passage of the First Step Act on December 21, 2018, the 25-year consecutive term for a successive 924(c) offense does not apply unless the defendant had a previous final conviction for that crime.

In this case, as explained in detail in the government's first response, Ramsey faced a guideline range of 360 months to life, plus mandatory consecutive terms totaling 35 years on two charges under Section 924(c) of discharging a firearm, plus a mandatory consecutive sentence of 10 years under Section 844(h) for using fire to commit a felony. The total sentence was therefore 75 years.

If Ramsey were sentenced under current law (putting aside the fact that the pertinent provision of the First Step Act is expressly non-retroactive), the guideline range would remain 360 months to life. The mandatory terms would be 10 years on each of the 924(c) brandishing charges, and 10 years on the 844(h) charge. Thus, if the Court again imposed a 360-month guideline sentence, the final sentence would be 60 years instead of 75 years.

This circumstance does not warrant relief for multiple reasons. First, this Court has previously held that this non-retroactive change in sentencing law by itself does not permit compassionate release under Section 3582(c)(1)(A)(i). *United States v. James McNamara*, No. 03-324-1, ECF No. 131 (July 23, 2020) (Diamond, J.).[1]

---

[1] This question has sharply divided scores of district courts. It is presently pending in the Third Circuit, in *United States v. Andrews*, No. 20-2768, which the parties

Second, any request for relief on this basis is quite premature in this case even if relief were allowed (which we dispute). Ramsey has served 22 years (with good conduct time included), well short of the sentence that would be imposed under current law for his egregious crimes, as the mandatory terms still total 30 years, and the final sentence would likely be much higher than that upon consideration of the Sentencing Guidelines.

This situation was addressed at length in *United States v. Hood*, 2020 WL 5539878, at *11-12 (S.D. Tex. Sept. 15, 2020). There, after presenting a through discussion of the state of the legal debate regarding compassionate release based on stacked 924(c) sentences, the court denied relief because the defendants still have years to serve if the current version of 924(c) were applied. Chief Judge Rosenthal stated: "The fact that Hood and Arterberry have years left in prison, combined with the divided and evolving legal landscape—which includes almost no input from the appellate courts or from the Commission itself—supports denying their sentence-reduction motions for now, without prejudice. . . . The record presents an ample basis to find that it would be prudent to rule when Hood and Arterberry might benefit from a sentence reduction, and when the applicable law may also be clearer." *See also, e.g.*, *United States v. Thompas*, 2020 WL 7336933, at *2 (E.D. Pa. Dec. 14, 2020) (Pappert, J.) (the request is premature where the defendant has served only 42 months of a 441-month term, including stacked 924(c) terms, for two violent gunpoint robberies; the Court agrees with the government that "it is plainly far too soon to assess his rehabilitation and have any confidence that he will not

---

there have exhaustively briefed.

offend again."); *United States v. Chaplain*, 2020 WL 5027484, at *3 (D. Neb. Aug. 24, 2020) (Camp, J.) (relief on stacked 924(c) terms is denied as the defendant has served only a small part of the sentence that would apply today; "Accordingly, the Court will deny his Motion without prejudice to resubmission no sooner than the year 2036."); *United States v. Gordon*, 2020 WL 2896910 (S.D. Ohio June 2, 2020) (Graham, J.) (denied because even if the new law applied, the defendant would have stacked sentences totaling 35 years and has not yet served that term); *United States v. Fuqua*, 2020 WL 5423919, at *3 (S.D. Ind. Sept. 10, 2020) (Magnus-Stinson, J.) (relief is denied based on reduction in First Step Act of § 841(b)(1)(A) mandatory from 20 years to 15 years, as "even if the change to § 841(b)(1)(A) could, in some case, be an extraordinary and compelling reason for a sentence reduction, it is not an extraordinary and compelling reason here. By Mr. Fuqua's own calculations, he has served only about 6 years of his sentence."); *United States v. Adams*, 2020 WL 6063055, at *7 (D.N.J. Oct. 14, 2020) (the court concludes that stacked 924(c) terms may present a basis for relief, but denies relief here, where the current sentence would be 27 years and the defendant has served only 20 thus far).

      **4. *Adeyemi*.** Finally, Ramsey's supplemental motion insists that relief is warranted based on the decision in *United States v. Adeyemi*, 2020 WL 3642478 (E.D. Pa. July 6, 2020) (Kearney, J.). In truth, the decision there does not support Ramsey's legal claim, and in any event, the cases could not be more different as a factual matter.

In *Adeyemi*, the Court agreed with this Court's view that compassionate release may *not* be based solely on the length of pre-First Step Act stacked 924(c) sentences. The Court stated:

> While we agree with Mr. Adeyemi and the majority of judges on many of the arguments stated above, we cannot conclude the December 2018 change in section 924(c)'s stacking law singularly constitutes an extraordinary and compelling reason warranting compassionate release. Our skepticism at the United States' arguments of retroactivity, parole system, and finality of sentencing does not end the inquiry. We remain concerned about the impact of a decision releasing Mr. Adeyemi solely because of a change in the law when Congress made clear the change is not retroactive. Though we recognize the injustice of Mr. Adeyemi's sentence, we cannot play the role of the legislator. Congress did not provide us a clear directive we can find the amendment to section 924(c) as an extraordinary and compelling reason alone warranting release. We will not craft a new sentencing policy by holding otherwise.

2020 WL 3642478 at *25.

Judge Kearney instead granted relief to defendant Adeyemi based on a combination of the length of the sentence, the defendant's medical condition (he suffered from asthma that he struggled to control during the pandemic), and all of the traditional sentencing factors, all of which favored release. *Id.* at *8 ("Mr. Adeyemi's circumstances, including the concerns raised by his health condition amidst a COVID-19 outbreak in his prison and his lengthy sentence, fulfill the factors outlined under the Director's Program Statement 5050.50 for 'other' extraordinary and compelling reasons."). Adeyemi had no prior criminal record. He had been a 19-year-old college student when, on one foolish night, he acted as the getaway driver during two robberies of fast-food restaurants, garnering a 32-year sentence that would be less than half under the current law related to stacked 924(c) terms.

Ramsey's case is totally different. At the time of his criminal conduct at issue here, he was a 30-year-old career offender, with previous convictions for bank robbery and drug offenses. He then organized and committed two very violent armed bank robberies, and to facilitate one, set fire to an elementary school. The comparison to the 19-year-old college student who made a single wrong decision in *Adeyemi* is simply absurd.

In this case, when imposing sentence, Judge Yohn stated, "in my 21 years as a Judge, I have never seen a combination of crimes that are fraught with more danger to more people, except in the possibility of – except for the possibility of homicides. Mr. Ramsey mentioned that some – one judge cites the fact that sometimes sentences under the sentencing guidelines are draconian, and I have seen examples of that. This is not one of them. Mr. Ramsey, through his criminal past, through his conduct in these two armed robberies which he organized and set up and directed, has earned every day of the sentence that I am about to impose." The court concluded, "I don't hand out very many 75 year sentences, Mr. Ramsey, but you earned it."

At this time, there is no basis to change that sentence. The non-retroactive change in sentencing law would still leave Ramsey with many years to serve, even if it applied. He recovered from COVID-19, and now presents no medical condition putting him at risk from that disease even if reinfection were possible. He presents no other basis recognized in Section 1B1.13 of the Guidelines as a basis for compassionate release. For these reasons, as well as all of those stated in our earlier submissions, the motion for compassionate release should be denied.

Respectfully yours,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

>Carina Laguzzi, Esq.
>P.O. Box 30095
>Philadelphia, PA  19103

>*/s Robert A. Zauzmer*
>ROBERT A. ZAUZMER
>Assistant United States Attorney

Dated:  December 23, 2020.